

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2007

# Lee v. Comhar Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2811

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Lee v. Comhar Inc" (2007). *2007 Decisions.* Paper 883.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/883

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2811

MARVIN E. LEE,
                                        Appellant

v.

COMHAR INC.

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 05-cv-01781)
District Judge: Honorable Lawrence F. Stengel

Submitted Under Third Circuit LAR 34.1(a)
December 5, 2006

Before: BARRY, CHAGARES AND ROTH, CIRCUIT JUDGES

(Filed: June 26, 2007 )

OPINION

PER CURIAM

    Appellant Marvin Lee, proceeding pro se, appeals the District Court's entry of

summary judgment in favor of Appellee.  For the reasons that follow, we will affirm.

    Lee was employed by Appellee, Comhar, Inc., as a direct care worker for

individuals with mental retardation. During the time in question, he worked at Comhar's Pennway site. David Milbourne was also an employee at this site. Lee and Milbourne worked different shifts, and usually overlapped for no more than one hour. Lee alleges that, during August and September of 2002, he was sexually harassed by Milbourne.

Lee describes three incidents that form the basis for his claim. First, Lee claims that on a number of occasions, Milbourne touched him on the arm while speaking to him. In one instance, while Lee and Milbourne were in the car transporting two of Comhar's clients to a workshop, Milbourne touched Lee's hat and then brushed his hand against Lee's shoulder. Lee states that he immediately stopped the car in response to this touching and told Milbourne never to touch him again, which Milbourne did not. Next, Lee maintains that while he was demonstrating a leg stretching technique on Milbourne in front of several other co-workers, Milbourne said "oh, that feels good," with what Lee believed to be a sexual connotation, causing the other people in the room laugh. Finally, Lee alleges that on September 27, 2002, as his shift ended and he was planning to leave the residence, Milbourne was standing in front of the door talking to someone on the steps outside, intentionally blocking Lee's exit. Lee states that he said "let me get by here, boy," at which point Milbourne moved out of the way and let Lee pass.

According to Lee, he complained to his and Milbourne's supervisor, Michelle Murrill, about Milbourne's behavior after each of the three incidents discussed above. In response to the last incident, Lee again met with Murrill and said to her: "this gay stuff is

2

starting to get psychotic." Lee further stated: "I'd hate to write an incident report that somebody fell down around here and got hurt." Lee admitted to making this comment at least two additional times, mainlining that it was intended as a joke. On October 4, 2002, Lee was suspended pending the results of an investigation into his threats of physical violence against Milbourne. Concurrently, an investigation into his claims of sexual harassment was undertaken by Comhar.

While he was suspended, Lee filed two incident reports alleging client abuse. One report was filed on November 18, 2002 with Sara Began, the client's case manager, based on an incident which allegedly occurred on September 28, 2002. The other was filed on November 22, 2002 with Mike Kennedy of the Philadelphia Department of Mental Retardation Services, complaining of both the aforementioned incident, and another incident of abuse which allegedly took place in July of 2002.

On November 26, 2002, Lee was notified by a letter from Barry McLaughlin, Comhar's Human Resources Director, that Comhar's investigation of his allegations of sexual harassment concluded that no such acts had occurred, and that its investigation into his behavior concluded that he has "expressed negative opinions, stereotyped people with insults and verbally threatened physical violence." Based on these results, Comhar terminated Lee's employment effective immediately.

Lee then filed the instant lawsuit in the United States District Court for the Eastern District of Pennsylvania. In his amended complaint, he alleged: (i) that he was the victim

3

of both quid pro quo and hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964; (ii) that he was terminated in violation of the Pennsylvania Whistleblower Law; (iii) that Appellee committed perjury in the context of an unemployment compensation hearing in violation of 18 Pa. Cons. Stat. Ann §§ 4902, 4903 & 4904; (iv) that Appellee intentionally or negligently misrepresented the contents of a settlement agreement in an attempt to defraud him of his right to sue in violation of 43 Pa. Cons. Stat. Ann. §§ 861, 872 & 873; and (v) that in doing (iii) and (iv), Appellee intentionally inflicted emotional distress on him. Lee sought compensatory, exemplary and punitive damages. On April 17, 2006, following a four-month period of discovery, Comhar moved for summary judgment. On May 18, 2006, the District Court granted Comhar's motion and the instant appeal followed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. Pennsylvania Coal. Ass'n v. Babbitt, 63 F.3d 231, 235 (3d Cir. 1995). Summary judgment is proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). We will draw all inferences from the record in favor of Appellant as the non-moving party. Id.

The District Court issued a thorough opinion granting Appellee's motion for summary judgment. For the reasons expressed by the District Court, we agree that, taking

4

all of Appellant's allegations as true, he has not made out a claim for either quid pro quo or hostile work environment sexual harassment or retaliation under Title VII, nor has he satisfied the requirements of a claim for negligent or intentional misrepresentation.  See Dist. Ct. Mem. & Order at 5-8, 9-11.  We further agree with the District Court that there is no private right of action under 18 Pa. Cons. Stat. Ann. §§ 4902, 4903 & 4904, or 42 Pa. Cons. Stat. Ann. §§ 861, 872 & 873.  See id. at 10.

With respect to Appellant's claim under the Pennsylvania Whistleblower Law, the District Court concluded that Appellant had failed to allege that Appellee is a public body, and therefore rejected his claim.  See 42 Pa. Cons. Stat. Ann. § 1423(a) (barring an employer from taking an adverse employment action against an employee who "makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste"); 42 Pa. Cons. Stat. Ann. § 1422 (limiting statute to employees of "public bod[ies]").  It is not entirely clear from the record that Appellee would not be considered a "public body" for purposes of the Pennsylvania Whistleblower Law.  See Denton v. Silver Stream Nursing & Rehab. Ctr., 739 A.2d 571 (Pa. Super. 1999) (holding that a recipient of Medicaid funding is a "public body" for purposes of the Whistleblower Law).  However, we need not reach this issue at the present time.  Appellee argues that Appellant offered no evidence indicating that it was aware of his complaints alleging client abuse prior to his termination, and Appellant has not offered any proof to rebut this assertion.  In fact, Appellant maintains that his

5

claim rests only on the fact that he made the complaints days before he was terminated, and that "it is not his responsibility to determine when or if the investigators contacted [Appellee]." Because Appellant has failed to demonstrate a causal connection between the filing his complaints and his subsequent termination, and because Appellee has offered a legitimate reason for Appellant's termination, we conclude that the District Court correctly entered summary judgment in favor of Appellee on this claim. See O'Rourke v. Commonwealth, 778A.2d 1194, 1204 (Pa. 2001) (holding that an employer may rebut a prima facie case of retaliation by demonstrating that it would have taken the same adverse employment action absent the employee's good faith report of wrongdoing).

Finally, Appellant claims that the District Court failed to address his claims for the intentional infliction of emotional distress. Under Pennsylvania law, liability for the intentional infliction of emotional distress lies only when the alleged conduct is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. 1987)). As we have held, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861F.2d 390, 395 (3d Cir. 1988). Appellant has alleged no conduct that rises to this level, and, as such, cannot

prevail on his claim for the intentional infliction of emotional distress.

Accordingly, we will affirm the judgment of the District Court. Appellant's motion for summary action is denied.